## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JULIA G. GOODMAN, | : | |
| Plaintiff, | : | |
| | | Case No. 3:11cv00012 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     INTRODUCTION

Plaintiff Julia G. Goodman brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for Supplemental Security Income ("SSI").  Plaintiff filed her application on

August 28, 2006, alleging that she has been disabled since August 2, 1999.[2]  (Doc. # 6-5,

*PageID#* 147-50).  She claims to be disabled by reason of degenerative disc disease;

fibromyalgia; arthritis in her back, left hip and left knee; bursitis in her left shoulder;

carpal tunnel syndrome in her left hand; depression; numbness in hands, feet, and legs;

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Under the controlling regulations, Plaintiff cannot receive benefits for any period prior to the filing of her application for SSI benefits. 20 C.F.R. § 416.335. SSI benefits cannot be awarded retroactively. SSR 83-20, 1983 WL 31249, at *1, *7 (1983).

and high blood pressure.  (Doc. # 6-6, *PageID#* 162).  After her application was denied during the initial administrative proceedings, Plaintiff was provided a hearing before Administrative Law Judge ("ALJ") Thaddeus J. Armstead Sr.  On February 24, 2010, the ALJ issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act, and was therefore not eligible for SSI.  (Doc. # 6-2, *PageID##* 55-68).  The ALJ's decision and the resulting denial of benefits became the final decision of the Social Security Administration.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), the administrative record (Doc. # 6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because the ALJ's decision was not supported by substantial evidence.  In the alternative, Plaintiff seeks an Order remanding the ALJ's decision to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 43 years old at the time of the administrative decision.  Thus, she is considered to be a "younger individual" for purposes of resolving her SSI claim.  *See* 20 C.F.R. § 416.963(c); *see also* Doc. # 6-2, *PageID#* 66; Doc. # 6-6, *PageID#* 190. Plaintiff has a high school education, *see* 20 C.F.R. § 416.964(b)(4); *see also* Doc. # 6-6,

*PageID#* 167, and past relevant work as a nurse's assistant and a cook. (Doc. # 6-6, *PageID##* 163, 171-78).

Plaintiff testified at the administrative hearing that she is disabled and unable to work due to nerve damage on her left side from the hip down, carpal tunnel syndrome, shoulder pain, neuropathy, irritable bowel syndrome, and depression. (Doc. # 6-2, *PageID##* 78-95). Plaintiff also testified that due to deterioration of her disc she needs two back fusion surgeries, but her doctor (Dr. Minella) would not perform fusion surgery until she lost 100 pounds. (Doc. # 6-2, *PageID##* 78-79). Plaintiff testified that depression made it difficult for her to be around others or to sleep, and depending on pain level, she had crying spells three to four times a day lasting 5 to 20 minutes. (Doc. # 6-2, *PageID##* 93-95).

As to her activities of daily living, Plaintiff reported that she could go to the grocery store, dust, wash dishes for up to 10 minutes, supervise cooking, and take care of dressing and personal grooming. (Doc. # 6-2, *PageID##* 95-96).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #7 at 3-12; Doc. #9 at 3-10. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative, a general identification of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinions of treating neurosurgeon, Phillip A. Minella, M.D. Plaintiff was initially examined by Dr. Minella on October 30, 2006. Plaintiff reported low back pain radiating into the left leg and bilateral foot numbness. On examination, positive left straight leg raise, absent left ankle jerk, and decreased sensation along the left leg were noted. Dr. Minella diagnosed L5-S1 herniated disc with lumbar radiculopathy, and suggested a microdiscectomy. (Doc. # 6-8, *PageID#* 386).

On November 21, 2006 Dr. Minella performed a L5-S1 left microlumbar discectomy. (Doc. # 6-7, *PageID##* 295-96, 302-14). Following surgery, Plaintiff complained of continued low back pain. Her left leg and foot pain were "much worse" since surgery. (Doc. # 6-8, *PageID#* 478). A December 19, 2006 lumbar spine MRI showed a possible L4-5 disc bulge, facet hypertrophy, and "prominent fluid collection." At L5-S1 there was a disc protrusion with right foraminal narrowing and paracentral "granulation tissue" most pronounced at the left S1 nerve root. (Doc. # 6-7, *PageID#* 315). Dr. Minella noted the MRI "actually looks better" than the previous MRI study and he found no lesion to explain Plaintiff's pain. Dr. Minella referred Plaintiff to a pain management specialist since her pain medication did not provide relief. (Doc. # 6-8, *PageID#* 385).

On April 7, 2008, Plaintiff returned to Dr. Minella. Dr. Minella reported that while he thought a fusion surgery may be the best option for Plaintiff, she was too obese to consider it, so he suggested a L5-S1 "redo microdiscectomy." (Doc. # 6-8, *PageID#* 474). Dr. Minella performed the second microdiscectomy on April 21, 2008. (Doc. #

6-7, *PageID##* 368-76; Doc. # 6-8, *PageID##* 485-90). Three weeks later, Plaintiff went to the ER with hip pain, but Dr. Minella told her that "unfortunately, at 5'7", 285 pounds, she is going to have hip pain" due to her weight. (Doc. # 6-8, *PageID#* 384). Dr. Minella noted that Plaintiff's back "looked fine" and was "not especially tender" after her surgery. (*Id.*). Dr. Minella told Plaintiff that anyone who had just had back surgery was going to have fluid in their back and that it was not unusual. (*Id.*). On June 9, 2008, Dr. Minella noted that Plaintiff was "doing satisfactorily." (*Id.*, *PageID#* 383). On July 30, 2008, Dr. Minella noted that Plaintiff had gained weight and was now over 300 pounds. (Doc. # 6-8, *PageID#* 380). He believed that Plaintiff's weight "needs to be addressed" and that he did not plan to perform any additional surgery until she lost weight. (*Id.*). That same day, Dr. Minella completed a Basic Medical Form for the Ohio Department of Job & Family Services. Dr. Minella opined that Plaintiff could not stand, walk, or sit at all, and could not lift any weight. Plaintiff's status was reported as "poor but stable." He noted that nothing more could be done for her – neither a future surgery or testing – until she lost weight. Dr. Minella concluded that Plaintiff would be unemployable for 12 months or more. (Doc. # 6-8, *PageID##* 381-82).

To support Dr. Minella's assessment, Plaintiff also relies on the opinion of her family practice physician, Dr. Hovest, who treated her since July 2004. In October 2006, Dr. Hovest, reported Plaintiff's abnormal clinical findings as lumbar spine tenderness, decreased left leg and foot sensation, positive straight leg raises on the left, decreased strength of left leg, and decreased range of motion of lumbar spine. Dr. Hovest also

reported that Plaintiff limped but did not need a cane. A positive left leg raise test suggested radiculopathy, but she suffered from no motor loss or reflex abnormalities. (Doc. # 6-7, *PageID*## 278-79).

Plaintiff further relies on examination findings of Aivars Vitols, D.O., who examined Plaintiff on behalf of the Ohio Bureau of Disability Determination ("Ohio BDD") on January 18, 2007. When examined by Dr. Vitols, Plaintiff had a slow antalgic gait, she was unable to stand erect, and unable to fully weight bear on the left. During the examination, Plaintiff could not heel and toe stand. Lumbar spine examination revealed tenderness throughout, reduced range of motion, and – due to "exogenous obesity" – myospasm could not be ruled out. Dr. Vitols diagnosed post laminectomy syndrome, hypertension, depression, and exogenous obesity. He concluded Plaintiff's "work capabilities and task of daily living are affected accordingly." (Doc. # 6-7, *PageID*## 317-25).

In addition, Plaintiff relies on the examination findings from the Dayton Pain Center to further support Dr. Minella's opinion. The record reveals that Plaintiff treated at the Dayton Pain Center from February 2007 to, at least, May 2009. (Doc. # 6-7, *PageID*## 346-56; Doc. # 6-9, *PageID*## 675-749). When Andreas H. Syllaba, D.O., initially examined Plaintiff, he found decreased low back range of motion, antalgic gait, positive left straight leg raise, and tenderness to palpation along both ileo-lumbar ligaments and sacroiliac joints. Plaintiff had significant trouble taking off, and putting on, her socks. (Doc. # 6-9, *PageID*## 738-49). Plaintiff was diagnosed with lumbar

radiculopathy, sciatica, and sacroiliatis. (*Id.*). He recommended lumbar epidural injections, medications, sensory nerve testing, physical therapy, and a psychiatric consultation. (*Id.*).

As to Plaintiff's mental impairment, she relies on the opinion of her treating psychiatrist, Charles Walters, M.D. Dr. Walters treated Plaintiff from April 2007 through at least April 2009. (Doc. # 6-7, *PageID##* 361-68; Doc. # 6-8, *PageID##* 542-66). On April 16, 2009, Dr. Walters opined that Plaintiff would not be able to perform adequately in a competitive work environment. Dr. Walters found that Plaintiff had "moderately-severe" ability to perform work with frequent contact with others, perform varied tasks, sustain attention, tolerate ordinary work-related stress, maintain production standards, maintain prompt and regular attendance, and perform at a consistent pace. Dr. Walters concluded that Plaintiff was "permanently and totally disabled from all sustained remunerative employment." (Doc. # 6-10, *PageID##* 819-22).

Plaintiff further finds support in the clinical notes from her treating psychotherapist, Harry E-Idol, BA, LPC, who found Plaintiff suffered from a depressed mood, poor immediate recall, and impaired recent and remote memory. (Doc. # 6-8, *PageID##* 543-60).

The Commissioner relies on the opinion of Jerry E. Flexman, Ph.D., who examined Plaintiff on October 3, 2006, at the request of the Ohio BDD. Plaintiff reported that she had a good relationship with her boyfriend and her three children; and socialized with family and friends regularly. Plaintiff also reported preparing meals regularly; doing

dishes and laundry; cleaning; taking out trash; shopping regularly; working on a computer; doing puzzles and crafts; and eating out. She also was able to visit with family regularly; babysit; read magazines and newspapers; and volunteer with the "Jaycees." Plaintiff further reported that she slept through the night and did not experience daytime fatigue. Plaintiff reported to Dr. Flexman that she experienced frequent crying spells, and decreased motivation. Dr. Flexman found her attention span and judgment to be fair. Dr. Flexman noted that Plaintiff's concentration, effort, insight, and memory were all good. Dr. Flexman diagnosed depression and somatoform disorder, and assessed a Global Assessment of Functioning (GAF) score of 65[3]. Dr. Flexman opined that Plaintiff's ability to interact with the public was moderately impaired. All other mental work-related activities were found to be only slightly impaired. (Doc. # 6-7, *PageID*## 255-58).

The Commissioner also relies on the opinions of Roy Shapiro, Ph.D., and Patricia Semmelman, Ph.D., who reviewed the psychological record on behalf of the Ohio BDD in October 2006 and June 2007. (Doc. # 6-7, *PageID*##259-77). The state agency psychologists determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, and mild difficulties maintaining

---

[3]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF score of 61-70 indicates that a person has only mild symptoms or some difficulty with social, occupational or school functioning, but such a person can generally functioning pretty well and have some meaningful interpersonal relationships. (*Id.*)

concentration, persistence or pace.  (*Id.*, *PageID#* 274).  They concluded that Plaintiff "appears capable of doing a wide variety of simple and complex tasks" and "may do best in non public settings, although she appears to interact socially on a regular basis."  (*Id.*, *PageID#* 262).

## III.  THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

### A.  <u>Applicable Standards</u>

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

### B.  <u>Social Security Regulations</u>

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See* Doc. # 6-2, *PageID##* 55-57; *see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully

considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).


### C.    ALJ Armstead's Decision

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged

in substantial gainful activity since the application date of August 28, 2006.  (Doc. # 6-2,

*PageID# 57*).

The ALJ found at Step 2 that Plaintiff has the severe impairments of status post

lumbar discectomy surgeries with residual effects, obesity, high blood pressure, and

depression.  (*Id.*).  The ALJ determined at Step 3 that Plaintiff does not have an

impairment or combination of impairments that meet or equal the level of severity

described in Appendix 1, Subpart P, Regulations No. 4.  (*Id., PageID#* 58).

When determining Plaintiff's residual functional capacity ("RFC") at Step 4, the

ALJ found

> [t]hat from the alleged onset date to November 20, 2006 (discectomy) and continuing to April 30, 2007, claimant could not sustain full-time work. Beginning May 1, 2007 and continuing to February 1, 2008,  the claimant had the residual functional capacity to perform light exertional work as defined in 20 CFR 416.967(b), except that she required the opportunity to sit for 5 to 10 minutes per hour and she should not bend below waist level; she could occasionally climb ramps and stairs, should not climb ramps ladders or scaffolding; she could occasionally crawl, crouch, stoop, and balance; she could occasionally use foot pedals, leg controls, or similar lower extremity controls; she should have had no contact with the general public as a work requirement; and she could perform simple-to-complex tasks.  Commencing February 2, 2008 (redo microdiscectomy surgery performed two months later, April 21, 2008) and continuing until October 21, 2008, the claimant could not sustain full-time work.  Commencing October 22, 2008, claimant has had the residual functional capacity to perform sedentary work with the same aforesaid functional restrictions applicable for light except for the reduction to a sedentary exertional level.

(*Id.*, *PageID##* 60-61).

The ALJ further determined that Plaintiff's allegations of disability are less than

credible.  (*Id.*, *PageID#* 62).  The ALJ next found that Plaintiff is not capable of

performing her past relevant work as a nurse's assistant or cook.  (*Id.*, *PageID#* 66).  The

ALJ found that considering Plaintiff's age, education, work experience, and RFC, there

are jobs that exist in significant numbers in the national economy that Plaintiff can

perform.  (*Id.*, *PageID##* 66-67).  This assessment, along with the ALJ's findings

throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and therefore not eligible for SSI.  (*Id., PageID# 67*).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own

regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    The Parties' Contentions

Plaintiff argues that the ALJ erred in his analysis of treating psychiatrist, Dr. Walters' opinions.  (Doc. # 7 at 14).  Plaintiff contends that Dr. Walters' assessments are supported by the necessary objective findings to support his opinions.  Plaintiff also contends that the remainder of the record, including the treatment provided by Plaintiff's treating psychotherapist, Mr. E-Idol, supports Dr. Walters' opinion.  (*Id.* at 17).

Plaintiff next argues that the ALJ failed to properly weigh the opinion of treating neurosurgeon, Dr. Minella, as to her physical limitations.  (*Id.*).  According to Plaintiff, Dr. Minella's opinion deserves controlling weight because it is supported by objective medical findings and consistent with, and supported by, other medical evidence of record. (*Id.* at 18).  In addition, Plaintiff argues that the ALJ replaced a well-supported treating specialist opinion with his own medical theory, which he does not have the authority to do. (*Id.* at 20).

The Commissioner contends that substantial evidence supports the ALJ's determination that Dr. Minella's opinion was not entitled to significant weight.  (Doc. #9 at 13).  The Commissioner argues that Dr. Minella did not provide any diagnostic testing,

13

objective findings, or explanation to support his conclusions. (*Id.* at 14). In addition, according to the Commissioner, Dr. Minella's limitations were extreme and not supported by the objective evidence, Plaintiff's testimony, or his own treatment notes; Dr. Minella relied on Plaintiff's own reports of symptoms and limitations; and Dr. Minella's extreme opinion was inconsistent with the opinions of other doctors. (*Id.* at 14-16).

The Commissioner also contends that the ALJ properly noted that Dr. Walters' assessments were deserving of little weight because they were internally inconsistent, inconsistent with the doctor's own records, and inconsistent with the opinions provided by Dr. Flexman, Dr. Shapiro, and Dr. Semmelman. (*Id.* at 17-19).

As discussed below, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

### B. <u>Medical Source Opinions</u>

#### 1. <u>Treating Medical Sources</u>

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*)

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *2. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(d), (f); *see also* Ruling 96-6p at *2-*3.

2. Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." SSR 96-6p. Yet the Regulations do

15

not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.* at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 416.927(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 416.927(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(f); *see also* SSR 96-6p at *2-*3.

###    C.    Discussion

####         1.    Physical Impairments

In considering the opinion of Dr. Minella, the ALJ specifically found that such opinion is "given little weight or deference." (Doc. # 6-2, *Page ID*# 64). He first cited his impression that the restrictions suggested by Dr. Minella, which "completely eliminat[ed] her ability [] to stand, walk or sit and provided for extremely limiting functional ability otherwise for all upper and lower extremities, leaving only her ability for normal use of her hearing, seeing and speaking capabilities," basically "made her an invalid." (*Id.*). The ALJ concluded that Dr. Minella's assessment was "not supported by the actual medical history record, objectives or clinical findings, including his own," and therefore his disability opinion should be given only "little weight." (*Id.*). A review of the ALJ's decision indicates that he applied the correct legal criteria in assessing the medical source opinion of Dr. Minella. As noted above, Dr. Minella opined that Plaintiff could not stand,

16

walk, or sit at all due to her chronic low back pain. (Doc. # 6-8, *PageID#* 381-82). He also concluded that Plaintiff could not lift any weight, that she was extremely limited in her ability to push, pull, bend, reach, or handle. (*Id.*). Dr. Minella concluded that no further testing or surgery could be accomplished until she lost a significant amount of weight. (*Id.*). However, subsequent x-rays taken in February 2009 showed only minimal lumbar levoscoliosis with mild spondylotic changes. (*See* Doc. # 6-8, *PageID#* 530). The ALJ also properly discounted Dr. Minella's opinions because they were conclusory, and he offered no support for these extreme limitations. On June 9, 2008, Dr. Minella noted that Plaintiff was "doing satisfactorily," and that despite some back stiffness, she should continue to exercise. (Doc. # 6-2, *PageID#* 64; Doc. # 6-8, *PageID#* 383). In February 2009, when treated in the emergency room, Plaintiff had full strength in both her arms and legs, no neurological deficits, and was able to ambulate without difficulty. (Doc. # 6-8, *PageID##* 533-34). Where a physician's opinion is not accompanied by the kinds of findings of clinical and diagnostic evidence required to support a doctor's opinion that a claimant has disabling limitations, the ALJ is not required to accept it. *See* 20 C.F.R. § 416.927(d)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Thus, Dr. Minella's conclusory opinions were properly discounted by the ALJ. Social Security Regulations place the burden on the claimant to produce evidence to show the existence of a disability. 20 C.F.R. §

416.912(a); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Thus, given the lack of supporting treatment records, the ALJ properly discounted Dr. Minella's disability finding. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). Given this analysis, there is no basis for this Court to conclude that the ALJ failed to apply the appropriate legal standards to Dr. Minella's opinion.

In addition, the ALJ's decision contains a discussion of her obesity and how it would affect her residual functional capacity and her ability to function in a work environment. The ALJ noted that Dr. Minella "considered her weight a primary consideration." (Doc. # 6-2, *PageID#* 64).

Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on the evaluation of obesity. SSR 02-01p provides that at Step 2 of the five-Step evaluation, obesity may be considered "severe" alone, or in combination with, another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-01p[6]. SSR 02-01p also explains that a claimant's obesity must be considered not only at Step 2 of the Commissioner's five-Step evaluation process, but also at the subsequent steps.

The ALJ determined that Plaintiff's RFC was consistent with the assessment of Dr. Vitols, the treatment records from Dr. Reddy (to the extent supported by the objective

data), Dr. Villanueva's February 2007 assessment, and the objective and clinical recorded medical history, including that of Dr. Minella, and other independent examination findings. (Doc. # 6-2, *PageID#* 64). The ALJ also noted the impact of Plaintiff's obesity on her spinal condition, as well as the inherent difficulties her obesity causes with respect to postural movements such as bending, crouching, and crawling with a bad back. (*Id.*, *PageID#* 65).

The ALJ noted that state agency reviewing physicians opined that Plaintiff was capable of light work, but he gave Plaintiff "the benefit of significant doubt with respect to her complaints of pain in her low back and lower extremities." (Doc. 6-2, *PageID#* 65). The ALJ included a sit/stand option in his determination of Plaintiff's RFC to avoid exacerbation of her low back and lower extremity pain. (*Id.*). In addition, the ALJ placed a restriction on the use of her lower extremities for use of pedals and leg controls. This was "added to accommodate the complaints of pain, numbness, and tingling in her lower extremities and feet." (*Id.*).

Plaintiff also contends in her Statement of Errors that the ALJ "replaced a well-supported treating specialist opinion with his own medical theory," making his contrary assessment "not supported by substantial evidence." (Doc. #7 at 20). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see also Meece v. Barnhart*, 192 Fed Appx. 456, 465 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion

of the treating physician is supported by the medical evidence"). In Plaintiff's case, the

ALJ did not commit this error. He discussed and relied on various medical source

opinions of record at Steps 2 through 4 of his sequential evaluation. (*See* Doc. # 6-2,

*PageID##* 57-66). By doing so, the ALJ did not substitute his own lay opinion in place of

medical source opinions on medical issues.

2.     Mental Impairments

Plaintiff contends that the ALJ erred by rejecting the opinions of her treating

psychiatrist, Dr. Walters. Plaintiff reasons that the ALJ failed to apply the correct legal

criteria during his evaluation of Dr. Walters' opinions, especially by omitting or

overlooking the types of signs and symptoms described in *Blankenship v. Bowen*, 874

F.2d 1116, 1121 (6th Cir. 1989).

For the same reasons the ALJ rejected the opinion of Dr. Minella, the ALJ gave

Dr. Walters' opinion "little weight or deference," because he found it inconsistent with

Dr. Walters' own assessment of essentially moderate mental limitations, and also

inconsistent with other substantial medical evidence in the record, including: the report of

psychological evaluation by Dr. Flexman; the reviews and assessments by Dr. Shapiro

and Dr. Semmelman; and Plaintiff's treatment records from Advanced Therapeutic

Services. (Doc. # 6-2, *PageID#* 60). By evaluating Dr. Walters' opinions in this

manner, the ALJ did not err as a matter of law. (*Id.*; *see also* 20 C.F.R.

416.927(d)(2)-(5)).

While arguing that the ALJ erred in failing to adopt the opinion of Dr. Walters, Plaintiff highlights a basis for which it is acceptable to disregard the opinion of a treating doctor. Here, Dr. Walters' opinion is internally inconsistent. In April 2008, Dr. Walters reported that Plaintiff was markedly limited in 13 functional areas, however, in July 2008, he opined Plaintiff had marked limitations in only 3 areas, and no ratings in 10 areas. (*Compare* Doc. # 6-8, *PageID##* 391, 483). Dr. Walters offers no reasons for his change in opinion or his sudden inability to rate Plaintiff's limitations in certain functional areas. (*Id.*). Dr. Walters reported on both of these Basic Medical Forms that Plaintiff had a depressed mood, (Doc. # 6-10, *PageID##* 392, 484), however, Dr. Walters' treatment notes from February, March, April, and June 2008, indicated improved symptoms, and euthymic mood and affect during that time. (*See* Doc. # 6-10, *PageID##* 552-61). Dr. Walters' internally inconsistent opinions do not support opinions of disability. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (ALJ is not bound by the disability opinion of a treating physician who provides conflicting opinions throughout the relevant time period). *See Render v. Sec'y of Health & Human Servs.*, 1989 WL 34104, *3 (6th Cir. Apr. 3, 1989) (proper to discount treating physician's opinion which was internally inconsistent).

Furthermore, the opinion of Dr. Walters is inconsistent with other substantial evidence in the record – particularly, the opinions of Dr. Flexman, Dr. Shapiro, and Dr. Semmelman. As noted above, Dr. Flexman found Plaintiff had only slight limitations in the following areas: making work-related judgments, sustaining concentration and

attention; interacting with co-workers and supervisors; and responding to work pressures or changes in the work environment. (Doc. # 6-7, *PageID#* 258). The state agency reviewing psychologists, Drs. Shapiro and Semmelman, concluded that Plaintiff appeared capable of doing a wide variety of simple and complex tasks, and may do best in non public settings, although she appears to interact socially on a regular basis. (*Id.*, *PageID##* 262, 359).

Accordingly, for the reasons set forth above, Plaintiff's challenges to the ALJ's decision lack merit.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's decision and non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

February 1, 2012

     s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).